**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

Case Number:_____-CIV-_____

NORMA O. GAZONNI,

      Plaintiff,

**v.**

TUMI USA, LLC., a foreign
Limited Liability Company,

      Defendant.

_____/

## COMPLAINT FOR PERMANENT INJUCTIVE RELIEF

      Plaintiff Norma O. Gazonni ("Plaintiff "or "Gazonni"), by and through undersigned

counsel, sues Defendant sues Defendant, TUMI USA LLC, a foreign Limited Liability Company,

(hereinafter referred to as "TUMI"), for Permanent Injunctive Relief pursuant to Title III of the

Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§s 12181-12189 ("ADA"), 28

U.S.C. §2201 and 2202 as well as 28 CFR Part 36 Regulations. Plaintiff state as follows:

## INTRODUCTION AND NATURE OF THE ACTION

      1.  This Court has jurisdiction over this case based on federal question Jurisdiction,

as provided in 28 U.S.C. §1331 and the provisions of the ADA.  Plaintiff seeks declaratory and

injunctive relief pursuant to 28 U.S.C. §§2201 and 2202.

      2. Plaintiff is a visually-impaired and legally blind person (disabled) who requires

assistance through screen-reader software to speak website content using her computer or

cellphone.  Plaintiff uses the term "blind" or "visually impaired" as legally blind. Disable as

defined by ADA and Amendment acts of 2008, 42 USC §12101 (ADAAA).

1

3. Venue is proper in this Court as all actions complained of herein and injuries and damages suffered occurred in the Southern District of Florida.

4. Defendant's website https://tumi.com/ (the "Website") is not fully or equally accessible to blind or visually impaired consumers in violation of the "ADA." As a result, Plaintiff seeks a permanent injunction to cause a change in TUMI USA LLC ("Defendant" or "TUMI") policies, practices and procedures so that Defendant's website will become, and remain, accessible to blind. Plaintiff seeks injunctive relief, attorneys' fees and costs, including, but not limited to, court costs and expert fees, pursuant to Title III of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§s 12181-12189 ("ADA") and 42 U.S.C. 2000a-3(a). *See also* 28 U.S.C. 2201 and 2202 as well as ADA 28 CFR Part 36 Regulations.

5. Plaintiff is sui juris, and she is disabled as defined by the ADA and ADA Amendments Act of 2008, 42 U.S.C. §12101 ("ADAAA"). Defendant's failure to design, build, maintain, and operate its https://tumi.com/ to be fully and equally accessible to and independently operational by Plaintiff, constitutes in Defendant's denial of full and equal access to physical stores and Website, resulting in a violation of Plaintiff's rights under the Americans with Disabilities Act ("ADA").

6. Defendant's website is a point of sale for the Defendant physical store. The Defendant's e-commerce platform (https://tumi.com the "Website") allows purchase of the same merchandise online or at the brick-mortar store.

7. The Defendant owns and operates the Website for desktop and mobile application for e-commerce as well as several stores that are located in Florida.

8. Because Defendant is a store open to the public, each of Defendant's physical stores is a place of public accommodation subject to the requirements of Title III of the ADA, 42 U.S.C. §12182, §12181(7)(E), and its implementing regulations, 28 C.F.R. Part 36.

9. Plaintiff Norma Gazonni, a blind woman, residing in Miami, Florida brings this action under the Americans with Disabilities Act in Federal Court.

10. Blind and visually impaired citizens must use screen reading software[1] or other assistive technologies in order to access website content.

11. Plaintiff cannot use her computer and mobile device browser without the assistance of appropriate and available screen reader software to understand websites.

12. Said Defendant entities will hereinafter collectively be referred to as "TUMI" or, where appropriate, "Defendant."

13. Screen reader software translates the visual internet into an auditory equivalent. which vocalizes visual information found on the computer screen. With this software, Plaintiff has successfully used hundreds of websites. The software reads the content of a webpage to the user. The screen reading software uses auditory cues to allow a visually impaired user to effectively navigate the websites.

14. Plaintiff visited the Website from her home and on her mobile device for the purpose of locating Defendant's nearest physical retail store, reviewing Defendant's merchandise, comparing product prices, confirming store information, and determining whether merchandise could be purchased online and obtained from a physical store location. One of the Website's functions is to provide the public with information regarding Defendant's physical store locations

---

[1] "screen reader" is a software application that enables people with severe visual impairments to use a computer. Screen readers work closely with the computer's Operating System (OS) to verbalize information about icons, menus, dialogue boxes, files and folders.

through a store-locator feature. Another function of the Website is to serve as a point of sale for Defendant's merchandise and to allow users to browse and pre-shop merchandise before visiting Defendant's physical stores.

15. After due diligence, Plaintiff was informed that there is a TUMI's store near Plaintiff's home, at the Brickell City Center, Miami, FL. Plaintiff regularly travels near the TUMI location since her work is a few blocks from Brickell City Center mall. Plaintiff usually visit the mall for shopping.

16. This action arises from Defendant's ongoing operation of its business in a manner that effectively excludes individuals who are visually impaired, including Plaintiff, from full and equal access to Defendant's physical retail locations and its e-commerce website ("Website"). The Website offers the same goods available in Defendant's brick-and-mortar stores and functions as an integrated extension and gateway to those physical locations. Through the Website, consumers can access product information, locate Defendant's stores, and purchase merchandise at any time, 24 hours a day, seven days a week—whereas Defendant's physical stores are open only during limited business hours. The Website is therefore inextricably linked to, and has a direct nexus with, Defendant's physical locations, serving as a vital point of access to the goods, services, privileges, and advantages Defendant offers to the general public.

17. Because the public may view and purchase Defendant's goods through the Website, goods that are also offered for sale in Defendant's physical stores—the Website functions as a point of sale for Defendant's products, facilitates in-store and curbside pickup of merchandise purchased online, and provides benefits for use both online and in the physical stores. Accordingly, the Website operates as an extension of, and gateway to, Defendant's brick-and-mortar locations,

4

which are places of public accommodation within the meaning of the ADA, 42 U.S.C. § 12181(7)(E).

18. Because Plaintiff is legally blind, she plans shopping trips in advance and relies on websites to obtain the same pre-visit (pre-shop) information available to sighted customers, including store location, store hours, merchandise information, pricing, and whether a desired item is available for purchase. On or about July 20, 22, 23,27, 28, 29, 2026, Plaintiff attempted to access Defendant's Website using NVDA, and VoiceOver in order to pre-shop Defendant's nearest physical store and shop Defendant's merchandise before arranging transportation to the store, making a shopping list, or purchasing online and pick up at the store. During those visits, Plaintiff was unable to independently locate the store information and merchandise information she needed because the Website was not fully readable or navigable with screen-reader software.

19. Plaintiff specifically intended to patronize Defendant's physical store located at the Brickel City Center, which is near Plaintiff's residence in Miami. Plaintiff attempted to use the Website to pre-shop, confirm the store hours, review Defendant's luggage and bags, compare prices, and determine whether she could make a purchase online and pick up in store or otherwise shop before her visit.

20. Plaintiff has previously visited one of Defendant's physical store locations with family, although that prior store visit occurred outside Florida. That prior visit familiarized Plaintiff with Defendant's merchandise and reinforced Plaintiff's interest in patronizing Defendant's stores. Plaintiff remains interested in patronizing Defendant's physical-store and purchasing Defendant's luggage and bags there, but she has been impeded from doing so on equal terms with sighted customers because she cannot independently use Defendant's Website to locate Defendant's nearest store, review store information, pre-shop merchandise, compare

pricing, and plan a visit to the store. The barriers Plaintiff encountered on Defendant's Website have impeded Plaintiff's full and equal enjoyment of the goods and services offered at Defendant's brick-and-mortar stores.

21. Before visiting Defendant's physical store, Plaintiff needs to review the store online because, as a visually disabled individual, Plaintiff plans outings in advance and relies on accessible website information to determine where the store is located, whether it is open, what merchandise is offered, and whether the trip is worthwhile. Without access to that information, Plaintiff cannot plan her shopping trip in the same manner as sighted members of the public.

22. As a result of the Website's accessibility barriers, Plaintiff was unable to effectively use the Website to locate Defendant's store, pre-shop merchandise, review product pricing, create an account, sign up for Defendant's electronic communications, and determine whether Defendant's merchandise could be purchased online or obtained in connection with a physical store visit. These are services, privileges, and advantages connected to Defendant's physical stores and available to sighted customers through the Website.

23. Plaintiff is impeded to access and communicate with Defendant effectively, unable to take advantage and use the Website to pre-shop and purchase Defendant's merchandise, to arrange in-store pickup of merchandise purchased online, create an account and sign up for an electronic emailer to receive exclusive online offers, benefits, invitations, and discounts for use both online and in the physical stores.

24. Plaintiff intends to return to Defendant's Website and to patronize Defendant's physical store in 30 days and including during Defendant's seasonal promotions, semi-annual sale periods, holiday shopping periods. Plaintiff intends to revisit the website and physical store previous to travelling on vacation and on Labor day and Black Friday to take advantage of

sales event, to purchase a luggage and bag. Unless the barriers are remediated, she expects to encounter the same barriers and remain unable to patronize TUMI on equal terms. Plaintiff intends to use the Website again to review Defendant's merchandise, compare pricing, and plan an in-store purchase, but Plaintiff remains deterred from doing so because of the accessibility barriers described herein. Plaintiff's intent to return is real, immediate, and concrete, and not merely hypothetical or someday.

25. Unless Defendant is required to eliminate the access barriers at issue and adopt policies, practices, and procedures to ensure that those barriers do not reoccur, Plaintiff will continue to be denied full and equal access to Defendant's Website and will continue to be deterred from using the Website to plan and complete a visit to Defendant's physical store. Defendant's failure to provide auxiliary aids and services for effective communications is an act of discrimination against Plaintiff. *Title III ADA 28 C.F.R. § 36.303.*

26. This Court has jurisdiction over this case based on federal question jurisdiction, 28 U.S.C. §1331, and the provisions of the ADA. Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§2201 and 2202.

27. Defendant has shops in the State of Florida. Defendant conducts and continues to conduct a substantial and significant amount of business in this District.

28. Plaintiff's claims asserted herein arose in this judicial district. Plaintiff was told that there is a TUMI's store near her area.

29. Plaintiff is a resident of Miami, zip code FL 33145, she is *sui juris*, and is disabled as defined by the ADA and ADA Amendments Act of 2008, 42 U.S.C. §12101 ("ADAAA").

30. This is an action injunctive relief pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), 28 C.F.R. § 36.201 and to prevent

discrimination which includes equal access and effective communications with Defendant's business. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343.

31. Defendant is subject to personal jurisdiction in this District. Defendant has committed, and continues to commit, the acts and omissions alleged herein within the Southern District of Florida, causing injury to Plaintiff and violating rights secured by the Americans with Disabilities Act ("ADA"). A substantial part of the events and omissions giving rise to Plaintiff's claims occurred within this District. On multiple occasions, Plaintiff has been denied the full and equal use and enjoyment of Defendant's goods, services, and facilities offered through its Website while in Florida. The access barriers encountered on Defendant's Website have repeatedly deprived Plaintiff of full and equal access and now deter Plaintiff, on a regular basis, from attempting to access Defendant's Website. Defendant V OPCO LLC is authorized to do business in the State of Florida and is, in fact, conducting business within the State and within the jurisdiction of this Court.

## THE PARTIES

32. Plaintiff, Norma Gazonni, is a resident of the State of Florida. Plaintiff resides in Miami. Gazonni is legally blind, and a member of a protected class under the ADA. Whereby, she has a disability within the meaning of 42 U.S.C. § 12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.* and in 42 U.S.C. 3602, §802(h). Plaintiff was diagnosed 19 years ago with retinitis pigmentosa in both eyes by Bascom Palmer Eye Institute. Retinitis Pigmentosa ("RP") is a progressive, degenerative genetic disorder that causes a continual decline in visual function. As a result of this condition, she is now legally blind, and her visual impairment is permanent. Plaintiff is a legally blind individual who has a physical impairment that substantially limits the major life activity of seeing. Accordingly, she has a disability within the

meaning of 42 U.S.C. § 12102 and 28 C.F.R. § 35.104. Plaintiff is a qualified individual with a disability within the meaning of 42 U.S.C. § 12131(2), 29 U.S. Code § 794 and 28 C.F.R. § 35.104.

33. Plaintiff cannot use the computer without the assistance of a screen reader software. Gazonni is a proficient user of the NVDA and Voiceover screen-reader to access the internet." NVDA (Windows' screen reader) and Voiceover (IPhone's screen reader) are the most popular screen reading software. For screen-reading software to function properly, website content must be capable of being converted into text that the screen reader can then audibly convey to the user.

34. TUMI USA LLC is a Foreign Delaware Limited Liability Company. Defendant is the owner and operator of several luggage stores under the brand name TUMI. Defendant produces and distributes luggage and bags to its stores and distributors in Florida.

35. Upon information and belief, at all times material hereto, Defendant TUMI USA LLC owns, controls, and/or manages the day-to-day affairs of TUMI stores which are operating within the State of Florida. Defendant's store are public accommodations pursuant to 42 U.S.C. § 12181(7)(E).

36. Plaintiff believes, and thereon alleges, that defendant corporate and affiliates and/or related entities, actively engaged in the sale of apparel in various states throughout the country, including Florida.

### FACTS

37. Defendant is defined as a "Place of Public Accommodation" within meaning of Title III because Defendant is a private entity which owns and/or operates "[E] clothing store, hardware store, shopping center, or other sales establishment," 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104(5).

38. Each of Defendant's stores are open to the public and each is a Place of Public Accommodation subject to the requirements of Title III of the ADA and its implementing regulation as "A clothing store, other sales establishment," as defined by 42 U.S.C. §12181(7)(E); §12182, and 28 C.F.R. Part 36.

39. TUMI's stores offer luggage, bags and accessories for sale to the general public.

40. Defendant has control over several points of sale including the Website, its content, design and source-code, and/or operates her web pages, including image and data content. The defendant owns and operates https://tumi.com/ for desktops and mobile devices.

41. Defendant's Website is not merely informational; it functions as a point of sale and as an integrated gateway to Defendant's physical stores. Through the Website, customers can pre-shop Defendant's merchandise, review product details and pricing, locate the nearest store, and purchase merchandise online for pickup at a physical store location. Because these store-connected sales functions were inaccessible to Plaintiff through screen-reader software, Plaintiff was impeded from using the Website in the same manner as sighted customers to prepare for and complete a visit to Defendant's physical store. Specifically, Plaintiff could not independently pre-shop merchandise before traveling, determine whether items of interest justified the trip, or purchase merchandise through the Website for pickup at the store. As a result, the Website's inaccessibility operated as an intangible barrier that impeded Plaintiff's ability to visit and patronize Defendant's physical store and denied Plaintiff full and equal enjoyment of the goods, services, privileges, and advantages offered there.

42. During attempts to access Defendant's Website using NVDA screen-reader software on a computer for Windows, and VoiceOver on a mobile device, including on or about July 20, 22, 23,27, 28, 29, 2026, and she will try to visit the website again in 30 days or when the

website is fixed and accessibility violations removed. Plaintiff visited the Website in preparation for visiting Defendant's physical store. Plaintiff attempted to use the Defendant's Website, confirm store information, review luggage and bags, compare pricing and materials, and determine whether she could purchase merchandise online and later obtain it in connection with the physical store. Plaintiff was interested in purchasing a top and a handbag among other merchandise. Because the Website was incompatible with screen-reader software, Plaintiff was unable to independently obtain the information necessary to plan and carry out her intended store visit. Plaintiff personally encountered the following barriers that are persistent and include, but are not limited to:

a. **Images**. Non-Text Content (WCAG 2.1, Success Criterion 1.1.1 , 4.1.1.1, 4.1.2- Name, Role, Value) – The Website's images lack meaningful alternative text ("ALT" attributes). Screen-reading software relies on ALT text to convey image content to users with visual disabilities. The Website does not announce meaningful information; the images are announced merely as "product title slider one of two". Duplicate ID of the image (product title), which does not identify the purpose, content, or destination of the image. Carousel announces clickable 3, clickable 4,…(videos 1, 3).

b. **Store locator**. **Store-locator controls include unnamed inputs-** Where: TUMI Store Locator. Although the postal-code/city field and "Find Stores" button have identifiable names, the locator also exposes additional unnamed inputs around "Use My Location," the postal-code field, result controls, and "Save as My Store." The page additionally rendered the message "Please obtain a Google Maps API key and put it in Site Preferences," which is internal implementation text unrelated to the customer's task. WCAG violations: 1.3.1 — Info and Relationships, 2.4.6 — Headings and Labels, 3.3.2 — Labels or Instructions, 4.1.2 — Name, Role, Value. NVDA impact: Plaintiff and other blind user may not know whether an unnamed control enables geolocation,

selects a store type, clears a search, or performs another action. The internal API-key message may also confuse the user about whether the locator is functioning. On "Visit store page" the Website fails to focus on the store address, hours and services and only announces the phone number. (video 2).

c. **Empty links are present in the header, navigation, and product content-** The product-page accessibility surface includes links with no discernible text, including an empty header link and multiple empty links around the ratings component. Some mega-menu entries also contain separate empty links adjacent to named category links. WCAG violations: 2.4.4 — Link Purpose (In Context), 2.4.6 — Headings and Labels, 4.1.2 — Name, Role, Value. Plaintiff cannot determine whether the link opens a product image, rating information, navigation category, or another function. Announces "blank", check zero one five nine". (video 4).

d. **Video-media controls are not exposed with proper control semantics and video has no audio description.** Where: landing page and individual product pages near the product image gallery. The videos at landing page and product-page output exposes two graphics named "pause button," but they are exposed as images rather than clearly identified button controls. The website does not describe the videos. Other gallery controls appear as unnamed inputs. If these graphics control rotating product media or video, the source does not expose a reliable button role, accessible state, or keyboard-operable control. WCAG violations: 1.1.1 — Non-text Content 2.1.1 — Keyboard, 2.2.2 — Pause, Stop, Hide, 4.1.2 — Name, Role, Value. NVDA impact: NVDA may announce "pause button graphic" without identifying it as an actionable button. A keyboard user may be unable to stop automatically moving media or understand which image is currently displayed.

e. Failed GDPR- **Cookie Preference Management — No Keyboard Focus:** TUMI's cookie-preference interface does not receive visible or programmatic keyboard focus, preventing Plaintiff from accessing or changing consent selections with a keyboard and screen reader. Plaintiff therefore cannot independently accept, reject, or withdraw consent for nonessential cookies. This violates WCAG 2.1 SC 2.1.1 (Keyboard), 2.4.3 (Focus Order), 2.4.7 (Focus Visible), and 4.1.2 (Name, Role, Value). It may also undermine valid consent under GDPR Articles 7(2) and 7(3), because consent controls must be accessible and withdrawing consent must be as easy as giving it.

f. **Duplicate breadcrumb navigation appears in the product-page source-** Where: Product detail pages. On the Expandable Carry-On product page, the same breadcrumb sequence—Home, Luggage, Carry-On Luggage, Standard Carry-On Luggage—appears approximately three times before the product heading. WCAG implicated:1.3.1 — Info and Relationships, 2.4.3 — Focus Order, 2.4.6 — Headings and Labels. NVDA impact: If the duplicate responsive versions are not properly hidden with display:none, hidden, or aria-hidden, NVDA will read the same navigation repeatedly before reaching the product name and purchasing controls.

g. **Bypass Block** *(W.C.A.G 2.4.1)* - there is no "skip to main content". Skip to Main Content Link is missing in the pages.

h. **Keyboard Navigation and Focus Order (WCAG 2.1, Success Criterion 2.4.3 and 2.4.7)** – When navigating with a keyboard, the focus order skips essential interactive elements, buttons and control. The absence of programmatic focus prevents keyboard-only users from understanding the purchase process.

i. **Product-grid filter and result updates require live-announcement verification.** Where: Luggage, Backpacks, Carry-On, and Sale category pages. The DOM contains filters, "Show [number] Products," "Viewing 24 of [number] products," and "Load More." Static source does not

establish that changes to the product count or newly loaded products are announced through an aria-live region or status role. WCAG potentially violated if updates are silent: 4.1.3 — Status Messages, 2.4.3 — Focus Order.NVDA impact: After Plaintiff applying a filter or selecting "Load More," a sighted user sees the number and product grid change. If NVDA receives no announcement and focus does not move to the updated results, Plaintiff cannot determine whether the action succeeded or where the new content begins.

 j. Evidence- the screen capture recording of the Website violations:

https://drive.google.com/file/d/1vfK2Dbecn1ylbAnZ8Qmqsyu4lJXLqZ-k/view

https://drive.google.com/file/d/1xhkBGkCwiNwQ1c2G8SVgceoIKnhEmmei/view

https://drive.google.com/file/d/1oEosk4Wm4k9O9VdP9KKJIf2GXK7rvoU8/view

https://drive.google.com/file/d/17iC9SWEQRUTQyZttSCD_8SYl1jS2wbAB/view

 43. Because Defendant's Website serves as a point of sale connected to Defendant's physical stores, and not merely as a source of general information, its inaccessibility directly impeded Plaintiff's ability to visit and patronize Defendant's physical store. The Website allows sighted customers to pre-shop, compare prices, and purchase merchandise online for pickup at a store location. Plaintiff, however, could not independently access those sales-related functions with screen-reader software. Those barriers prevented Plaintiff from choosing the best luggage for her, including price, quality, size and color, without being able to pre-shop, Plaintiff was prevented, delayed, and deterred from visiting the physical store.  Without equal access to those point-of-sale features, Plaintiff was unable to assess merchandise before traveling, determine whether a trip to the store was worthwhile, or complete a purchase on the Website for pickup at the store. In this way, the inaccessible Website created an intangible barrier to Plaintiff's use and enjoyment of Defendant's physical store.

44. Plaintiff's inability to access the store and product information on the Website precluded Plaintiff's ability to patronize Defendant's store because, as a blind individual, Plaintiff must plan outings in advance, including identifying the destination, arranging transportation, and deciding whether the available goods and services justify the trip. Without equal access to the Website, Plaintiff could not make those preparations in the same way as sighted customers.

45. Because Defendant's Website is inaccessible to screen-reader software, Plaintiff could not determine which stores were open in her area, view accurate product pricing, purchase TUMI's luggage and bags for in-store pickup, access special discounts, register an account, or complete an online transaction. This inaccessibility impeded Plaintiff's ability to plan a visit, pre-purchase merchandise, and otherwise benefit from services that are integrated with, and privileges of, Defendant's physical stores. The Website's inaccessibility denied Plaintiff meaningful access to the goods and services of Defendant's brick-and-mortar locations and, unless remedied, will continue to deter her from visiting those locations.

46. Plaintiff was unable to find an Accessibility Statement or notice to assist her navigate the Defendant's website. During due diligence an expert was consulted and found innumerous unique issue-barriers under the WCAG=World Content Accessibility Guidelines, just in one page of the website, this website contains hundreds of code-lines that are incompatible with screen-readers, thus inaccessible to Plaintiff.

## AMERICAN WITH DISABILITIES ACT

47. The failure to access the information needed precluded Plaintiff's ability to patronize Defendant's stores because, as a blind individual, Plaintiff needs to plan his outings out in detail in order to have the proper financing for a venture, and ensure that Plaintiff arrives at a given location.

48. Under Title III of the ADA, 42 U.S.C. §§ 12181–12189 ("Title III"), which addresses "Public Accommodations and Services Operated by Private Entities." Title III provides that "[n]o individual shall be discriminated against on the basis of disability in any place of public accommodation." 42 U.S.C. § 12182(a).

49. Title III provides that "no individual shall be discriminated against on the basis of disability" in "any Place of Public Accommodation." 42 U.S.C. § 12182(a). As defined in Title III, the term "public accommodation" includes a "store and sales establishment" Id. § 12181(7)(E). Defendant owns and operates stores, TUMI.

50. The Department of Justice issued "Web Accessibility Guidance" under the Americans with Disability Act. The guidance discusses the importance of web accessibility, barriers that inaccessible websites create for people with disabilities, tips on making web content accessible and applied the Web Content Accessibility Guidelines ("WCAG") 2.1 to determine accessibility.

51. Binding Court acknowledged that Title III's public accommodation protection "covers both tangible and *intangible barriers*, such as screening rules or discriminatory procedures that restrict a disabled person's ability to enjoy the defendant entity's services and privileges.

52. The access barriers Plaintiff encountered on Defendant's Website caused Plaintiff a past injury by preventing her from independently obtaining the information she needed to plan a visit to Defendant's physical-store and from pre-shopping Defendant's merchandise on equal terms with sighted users. Those same barriers continue to deter Plaintiff from using Defendant's Website and from patronizing Defendant's physical-store unless and until the Website is made accessible.

53. Title III ADA Part 36 regulation was amended to integrate section 36.303 Auxiliary Aids and Services "A public accommodation shall furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities," when the website has a nexus with the physical store.

54. Because Plaintiff could not access and comprehend Defendant's Website in a manner substantially equivalent to sighted users, Plaintiff was denied full and equal access to Defendant's store-related information, goods, and services, and was subjected to frustration, humiliation, and unequal treatment. These access barriers caused Plaintiff concrete and particularized injury in fact, denied Plaintiff equal access on multiple occasions in the past, and continue to regularly deter Plaintiff from accessing Defendant's Website.

55. Plaintiff would like to become Defendant's patron and access the Defendant's physical store and the Website in the near future when the Defendant's website is accessible and Plaintiff can pre-shop and/or shop.

56. Plaintiff cannot make proper arrangements for transportation to Defendant's physical-store without being able to know in advance, through the Website, the location of the store, relevant store information, and the goods and services offered there. Because Plaintiff could not independently access that information through the Website, Plaintiff was effectively prevented from confidently planning and undertaking a visit to Defendant's physical-store.

57. Plaintiff will suffer continuing and ongoing harm unless Defendant is enjoined because Plaintiff expects to return to Defendant's Website on an ongoing basis in connection with future shopping, including during seasonal promotions, semi-annual sale periods, and new merchandise releases, or when the accessibility barriers are removed. Plaintiff regularly monitors retailers' websites before visiting physical stores, particularly during promotional sale periods and

17

new seasonal product releases and intends to do so again with respect to Defendant's Website and Defendant's physical-store. Yet, because the Website remains inaccessible to Plaintiff on equal terms with sighted users, Plaintiff remains deterred from using the Website to review merchandise, compare pricing, and plan and complete a visit to Defendant's physical store.

58. All Public Accommodations must ensure that their *Places of Public Accommodation* provide *Effective Communication* for all members of the general public, including individuals with disabilities pursuant *Title III ADA 28 C.F.R. § 36.303.*

59. Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove and this suit for injunctive relief is her only means to secure adequate redress from Defendant's unlawful and discriminatory practices.

60. Notice to Defendant is not required as a result of Defendant's failure to cure the violations. Enforcement of the rights of Plaintiff is right and just pursuant to 28 U.S.C. §§ 2201, 2202.

61. Enforcement of Plaintiff's rights under the ADA is right and just pursuant to 28 U.S.C. §§ 2201 and 2202 and Title III ADA Subpart E Section 36.501.

62.  Plaintiff has retained the law office of Brasil & Brasil P.A.- Lorena Brasil, Esq. and has agreed to pay a reasonable fee for services in the prosecution of this cause, including costs and expenses incurred. Plaintiff is entitled to have reasonable attorneys' fees, costs and expenses paid by Defendant TUMI.

## COUNT I – VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

63.  Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle of Title III of the ADA, which prohibits discrimination on the basis of disability by Public

Accommodations and requires Places of Public Accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36 Regulation.

64. As set forth above, and pursuant to 42 U.S.C. § 12181(7)(E), Defendant is a public accommodation under the ADA because it owns and/or operates the Website, which falls within the definition of § 12181(7)(E). As such, Defendant is subject to the requirements of the ADA and has failed to ensure effective communication with individuals with disabilities.

65. No notice is required because under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

66. Unlawful discrimination includes "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations." 42 U.S.C. § 12182(b)(2)(A)(II).

67. Unlawful discrimination includes failing to provide necessary auxiliary aids and services to ensure individuals with disabilities are not excluded, denied services, or treated differently, unless doing so would fundamentally alter the offering or impose an undue burden. 42 U.S.C. § 12182(b)(2)(A)(iii).

68.   Defendant is in violation of the ADA by creating barriers for individuals with disabilities who are visually impaired and who require the assistance of interface with screen reader software to comprehend and access its Website. These violations are ongoing.

69.   As a result of the inadequate development and administration of Defendant's Website, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and §12188, also 28 C.F.R. §36.501 to remedy the discrimination.

70.   Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff Gazonni injunctive relief; including an order to:

a) Require Defendant take the necessary steps to make the Website readily accessible to and usable by visually impaired users, and during that time period prior to the Defendant's Website being readily accessible, to provide a temporary alternative method for individuals with visual impairments to access the information available on the Website until such time that the requisite modifications are made. Title III American with Disabilities Act Part 36 Regulation.

b) Require Defendant to provide periodic maintenance of the accessible website through the appropriate auxiliary aids such that individuals with visual impairments will be able to always receive effectively communication with the Website for purposes of viewing and locating Defendant's stores and becoming informed of and signing up for Defendant's online merchandise, and of viewing electronic documents provided to the public within Defendant's Website.

c) During the time period prior to the Website's being designed to permit individuals with visual impairments to effectively communicate, requiring Defendant to provide an alternative method for individuals with visual impairments to effectively communicate so they are not impeded

from obtaining the goods and services made available to the public. Title III ADA Part 36 Regulation.

d) Plaintiff seeks injunctive relief requiring accessible communication, policy and procedure changes, employee accessibility training, and bi-monthly website maintenance so individuals with visual disabilities can access Defendant's stores, products, and purchasing services.

e) Plaintiff seeks an Order requiring Defendant to provide appropriate auxiliary aids and services so that individuals with visual disabilities can effectively access, navigate, and communicate through Defendant's Website in connection with Defendant's physical stores.

f) Plaintiff is entitled to recover reasonable attorney's fees, costs, and expenses. Plaintiff has retained the undersigned counsel to prosecute this action and has agreed to pay a reasonable fee for such legal services.

71. For all of the foregoing, the Plaintiff has no adequate remedy at law.

## **DEMAND FOR RELIEF**

**WHEREFORE**, Plaintiff Norma Gazonni hereby demands judgment against Defendant "TUMI USA LLC" and requests the following injunctive relief permanently enjoin Defendant from any practice, policy and/or procedure which will deny Plaintiff equal access to, and benefit from Defendant's services and goods, as well as the Court:

a. That the Court issue a declaration that Defendant's website is in violation of the Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.;

b. That the Court enter an Order directing Defendant, by a certain date, to remove barriers and continually update and maintain their computer version of the defendant's websites to ensure that it remains fully accessible to and usable by visually impaired individuals;

c. That the Court issue an Injunctive relief order directing Defendant to alter their website to make it accessible to, and useable by, individuals with disabilities to the full extent required by Title III of the ADA;

d. That the Court enter an award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205; and Title III of the ADA Section 36.505.

Respectfully submitted,

Dated this 2nd day of August, 2026.

/s/Lorena Brasil
Attorney for Plaintiff
Brasil & Brasil, P.A.
Lorena Brasil, Esq.
FBN: 1049012
500 E. Broward Blvd. Suite 900
Fort Lauderdale, Florida 33394
Tel: 954-848-2929
contact@bblawfirmfl.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd of August, 2026 that the foregoing document has been filed using CM/ECF system and will be served via email when Defendant/Defendant's counsel enters an appearance.

/s/Lorena Brasil
Attorney for Plaintiff
Brasil & Brasil, P.A.
Lorena Brasil, Esq.